**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | **Civil No.** |
| **ASSORTED PRECIOUS METALS,** | |
| Defendants. | |

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its attorneys, R. Matthew Price, United States Attorney for the Western District of Missouri, and Anthony M. Brown, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to forfeit property to the United States under 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).[1]

## THE DEFENDANTS IN REM

2.      The Defendant Properties consist of the following property that was seized from Bobby Hunter ("Hunter") on November 5, 2025, at his residence in Springfield, Greene County, Western District of Missouri, by agents of the Internal Revenue Service – Criminal Investigation ("IRS-CI"):

---

[1] 18 U.S.C. § 981(a)(1)(C) provides for forfeiture of property derived from proceeds traceable to, *inter alia*, a "specified unlawful activity" (SUA) or a conspiracy to commit such an offense. SUAs are defined at 18 U.S.C. § 1957(c)(7). SUAs include any offense under Section 1961(1). 18 U.S.C. § 1956(c)(7)(A). Section 1343 wire fraud and Section 1956 money laundering are identified at 18 U.S.C. § 1961(1)(B).

a. 18 Silver Bills

b. 75 Assorted Coins

c. 72 Coins in Half Dollar Book

d. Vial with Gold Flakes

e. 50 Silver Bills in Box

f. 50 Silver Bills in Box

3. The Defendant Properties are currently in the custody of the Internal Revenue Service in the Western District of Missouri.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).

5. This Court has *in rem* jurisdiction over the Defendant Properties pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 18 U.S.C. § 981(h), because the owner of the property is located in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; pursuant to 28 U.S.C. § 1395, because the action accrued in this district and the property is located in this district;

2

## BASIS FOR FORFEITURE

7.      The Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), because they constitute property involved in a transaction or an attempted transaction, in violation of Title 18 U.S.C. §§ 1956 and 1957 or are traceable to such property.

8.      The Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), because they constitute or were derived from proceeds traceable to offenses constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses, that is wire fraud, bank fraud, or a conspiracy to commit wire or bank fraud.

## FACTUAL ALLEGATIONS

9.      Federal law enforcement began investigating Hunter in May 2024 based on his involvement in a suspected fraudulent investment scheme, in which Hunter would promise to hold funds in trust, but would in fact use the money on his own personal expenses.

10.      Hunter perpetrated his fraud using two business entities that he created: The Summit Group of MO Inc. ("TSG") and The Master Trust Under the Summit Group of MO ("TMT"), both of which were Hunter's primary sources of income.

11.      In July 2012, KR gave Hunter $160,000 to invest in an annuity, with the understanding that Hunter would name her as the beneficiary on the annuity policy.

12.      Instead of listing KR as the beneficiary, Hunter listed TMT as the beneficiary and the owner of the annuity.

13.      KR, acting through legal counsel, unsuccessfully attempted to recoup her monies from Hunter, TSG, and TMT in or around August 2017.

3

14.     Unbeknownst to KR, Hunter submitted a surrender request to the annuity company in August 2020 via facsimile, and liquidated KR's investment proceeds, totaling $187,612.64.

15.     Hunter later deposited the $187,612.64 in proceeds into an account titled in his name and TMT's, without the authorization or knowledge of KR.

16.     Between August 24, 2020, and September 21, 2020, Hunter conducted four transactions, each over $10,000, using the KR's investment proceeds without her knowledge or authorization, specifically, two $20,000 cashier's checks issued on August 24, a distribution to another investor for $11,220 on August 28, and another $44,000 and $24,000 in cashier's checks on September 17 and 21, all conducted through financial institutions.

17.     The purchased cashier's checks serve no legitimate purpose other than to conceal the funds obtained in liquidation of KR's investment, as the two $20,000 cashier's checks issued on August 24, 2020, were not cashed until December 29, 2020, which served no legitimate investment purpose and is not a common investment strategy, as there is no reasonable expectation of financial growth from such an approach.

18.     In March 2025, Hunter sent a "lulling email" to KR, telling her that she was receiving a return on her investment and giving her the impression that her investment was secure, despite knowing that he had completely liquidated her investment.

19.     Between 2016 and 2023, PB made at least $300,000 in payments to Hunter to be invested in a retirement plan; PB passed away in 2023.

20.     Upon her death, Hunter met with PB's family and informed them that PB's funds were held in a trust account, and that they would each receive $6,000 at a time, when in fact, there were not sufficient funds in the account to satisfy these payments.

4

21. PB's last investment with Hunter occurred in May 2023 and was in excess of $157,000. While Hunter invested the funds into a Money Metals Exchange (MME) account, he subsequently spent the money in that account on personal expenses, including hotels, vehicle expenses, cash withdrawals, and payment to others, including a "lulling payment" to PB in the amount of $30,394, which she was informed of by way of a note in a check memo line was, in part, a distribution from her retirement plan.

22. On November 5, 2025, federal law enforcement executed a search warrant at Hunter's residence, during which time the Defendant Properties were seized from Hunter.

23. Hunter voluntarily agreed to a non-custodial interview with federal law enforcement, in which he admitted to purchasing the Defendant Properties with investor funds.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

24. The Plaintiff repeats and incorporates by reference the paragraphs above.

25. By the foregoing and other acts, the Defendant Properties constitute proceeds involved in transactions or attempted transactions, in violation of Title 18, United States Code, Sections 1956 and 1957, or are property traceable to such a transaction, and therefore, are forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A).

### SECOND CLAIM FOR RELIEF

26. The Plaintiff repeats and incorporates by reference paragraphs 1 through 23.

27. By the foregoing and other acts, the Defendant Properties constitute or are derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, and therefore, are forfeitable to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C).

WHEREFORE the United States prays that the Defendant Properties be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

**R. MATTHEW PRICE**
United States Attorney


By:     */s/ Anthony M. Brown*_____
Anthony M. Brown
Assistant United States Attorney
Missouri Bar No. 62504
901 East St. Louis Street
Suite 500
Springfield, Missouri 65806
Phone: 417-575-8167
Email: Anthony.Brown2@usdoj.gov

6

## **VERIFICATION**

I, Special Agent Zachary Davis, hereby verify and declare under penalty of perjury that I am a Special Agent with the Internal Revenue Service – Criminal Investigation ("IRS-CI"), that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 9 through 23 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the IRS-CI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated 4/1/26

Davis Zachary H
Digitally signed by Davis Zachary H
Date: 2026.04.01 12:10:44 -05'00'

Zachary Davis
Special Agent IRS-CI

7